UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PARKHAM INDUSTRIAL DISTRIBUTORS, INC., d/b/a
ONSITE WASTE MANAGEMENT CORP., et al.                    PLAINTIFFS

v.                                                       CIVIL ACTION NO. 3:06CV-533-S

THE CINCINNATI INSURANCE COMPANY                         DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on cross-motions for partial summary judgment in this declaratory judgment action. In this action, the plaintiffs, Parkham Industrial Distributors, Inc., d/b/a Onsite Waste Management Corp. and Immediate Response Spill Technologies, LLC (collectively referred to as "IRST"), seek a declaration by the court that the defendant, The Cincinnati Insurance Company ("CIC"), has a duty to provide a defense and coverage in an action brought against them in the United States District Court for the District of Connecticut. CIC urges that it owes neither a defense nor coverage under the commercial insurance policies issued to the plaintiffs. IRST has also asserted claims for common law and statutory bad faith. Those claims are not in issue in these motions.

The following facts, as recited by IRST, appear to be undisputed.[1]

Since 1998, IRST has developed and sold products to remediate, contain and prevent oil spills and spills of other hazardous hydrocarbon-based materials. The plaintiff, Parkham, d/b/a Onsite Waste Management, is the marketing arm for IRST products. Both companies are headquartered in Louisville.

---

[1] These facts, taken from the plaintiffs' motion for summary judgment at pages 2-5, are immaterial to the decision, but are offered for purposes of providing background herein.

- 2 -

The active ingredient in many of IRST's products is a substance known as CI Agent which absorbs, encapsulates and solidifies oil and hydrocarbon-based materials.  The product absorbs oil but repels absorption of water.  For spills on salt or fresh water, the product can be broadcast directly onto the spill where it solidifies the oil, separates out the water, and floats the solid to the surface of the water.  The same application can be made to spills on land.  IRST also develops and sells other products such as oil absorbent, water repellant booms and pillows as well as flow-through chemical stop valve filters.

On April 19, 2005, Solidification Products International, Inc. ("SPI") filed Civil Action No. 3:05CV-635 against IRST in the United States District Court for the District of Connecticut.  SPI claims that it produces and sells oil spill and prevention products such as chemical valves, oil stop valves, drain inserts, and electrical sub-station barrier booms.  SPI alleged, in its Complaint and, later, First Amended Complaint that IRST and others engaged in patent infringement, negligent misrepresentation, fraudulent misrepresentation, and unfair trade practices under the Connecticut Unfair Trade Practices Act.

On November 1, 2003, CIC issued a commercial general liability insurance policy and a commercial umbrella liability insurance policy to IRST, both under Policy No. CPP 067 61 94. IRST provided timely notice to CIC of the lawsuit filed by SPI and demanded a defense and coverage.  CIC denied IRST's claim by letters dated August 10, 2005 (with respect to the Complaint) and August 25, 2005 (with respect to the First Amended Complaint).CIC based its denial on the exclusion in the policy for claims for or arising out of patent infringement.  In this action, IRST does not challenge CIC's determination that the policies[2] do not provide coverage for the alleged patent infringement.

---

[2]The pertinent language in both policies is identical.  Therefore, the court will hereinafter refer generally to "the policy."

IRST contends that the suit contains allegations which "potentially possibly or might" come within the coverages of the policy, and therefore CIC has a duty to provide it a defense in the Connecticut action. (*citing, O'Bannon v. Aetna Casualty & Surety Co.,* 678 S.W.2d 390 (Ky. 1984); *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co*., 814 S.W.2d 273 (Ky. 1991)).

IRST notes that the policy provides coverage for advertising injuries resulting from the disparagement of another's goods, products, or services. The policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which the insurance does not apply...
>
> (Policy, Coverage B, 1.a)
>
> The insurance applies to "personal and advertising injury" only if:
>
> The "personal and advertising injury" is caused by an offense arising out of your business...
>
> (Policy, Coverage B, 1.b.1)
>
> "Personal and advertising injury" means injury...arising out of...
>
> Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services...
>
> (Policy, Section 5 Definitions, 17.d)
>
> Exclusions
>
> This insurance does not apply to:
>
> ..."Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>
>> However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.
>>
>> (Policy, Coverage B Exclusions, 2.I)

- 3 -

IRST contends that CIC has a duty to defend in the Connecticut action because the First Amended Complaint contains allegations which could constitute disparagement and thus fall under the policy's advertising coverage. The complaint alleges that

> Defendant made false material misrepresentations to Plaintiff's prospective customers and consumers in Connecticut and elsewhere in the United States, that Defendants had all necessary rights in Plaintiff's patented technology (the '639', '390', and '077' patents) used in Defendants' aforementioned infringing products (Including, but not limited to, its so-called "Chemical Valves," Oil Stop Valves," "Drain Inserts" and "Electrical Sub-Station Barrier Booms") and therefore Defendants falsely represented to consumers of Plaintiff's patented products and methods that Defendants were engaged in lawful activity and not violating federal or state laws.

First Amended Complaint, ¶ 15. In the counts alleging negligent and fraudulent representation, the complaint states:

> Defendants made false material misrepresentations to Plaintiff's prospective customers and consumers in Connecticut and elsewhere in the United States, that Defendants had all necessary proprietary rights in the Plaintiff's patented technology used in their aforementioned infringing products...

First Amended Complaint, ¶¶ 26, 32.

IRST contends that the allegation that it falsely represented that it had "all necessary proprietary rights" in the technology used in its allegedly infringing products could be read to allege either (1) that IRST falsely advertised that it had all rights to sell SPI's patented technology, or (2) that IRST falsely advertised that it had its own patented technology. In either event, IRST contends that CIC must provide a defense to the claims because under either interpretation, the alleged statement disparages SPI's products.

Where an insurance policy is drafted in all details by an insurance company, the company must be held strictly accountable for the terms of the contract. *Wolford v. Wolford*, 662 S.W.2d 835, 838 (Ky.1984), *citing, National Insurance Underwriters v. Lexington Flying Club, Inc.,* 603 S.W.2d 490 (Ky.App.1979). CIC must defend the Connecticut suit herein if the language of the complaint would bring it within policy coverage regardless of the merit of the action. *Id.* at 838. However,

as noted in *St. Paul Fire & Marine Insurance Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 226-27 (Ky. 1994),

> The rule of strict construction against an insurance company certainly does not mean that every doubt must be resolved against it and does not interfere with the rule that the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract. Neither should a nonexistent ambiguity be utilized to resolve a policy against the company. We consider that courts should not rewrite an insurance contract to enlarge the risk to the insurer. *U.S. Fidelity & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31 (6th Cir. 1988).

Here, the applicable policy language is clear. If the complaint alleges an "advertising injury" under the policy; that is, that IRST made an oral or written publication of material that disparages the goods or products of SPI, CIC must provide a defense in the suit unless the advertising injury arises out of the infringement of a patent.

In *DecisionOne Corporation v. ITT Hartford Insurance Group*, 942 F.Supp. 1038 (E.D.Pa. 1996), the court found that the allegations of the complaint against the insured in that case potentially stated a claim under the advertising injury provision of the policy. The court concluded that "[b]ecause [the insured] allegedly made false and misleading comparisons to the [competitor]'s services, such that customers switched service providers, the allegations lie within the advertising injury definition as disparaging [that competitor's] services." *DecisionOne Corp.*, 942 F.Supp. at 1043.

In the case at bar, however, the complaint does not allege that IRST made any comparisons to SPI's goods or services. IRST is alleged to have stated that it had proprietary rights in its own technology (which SPI claims could not have been true because it holds the patents on the technology used by IRST), or that it had proprietary rights in SPI's technology (which SPI claims that it did not grant). It appears doubtful whether this allegation could constitute disparagement of SPI's goods. *See, Microtec Research v. Nationwide Mutual Ins. Co.*, 40 F.3d 968 (9th Cir. 1994)(complaint did not aver that insured had said anything negative about competitor); *The Frog,*

*Switch & Manufacturing Co., Inc. v. The Travelers Insurance Company*, 193 F.3d 742, 748 (3d Cir. 1999)("in *DecisionOne*... underlying complaint alleged...derogatory statements about...underlying plaintiff's own products, thus stating a cause of action for 'disparagement'...covered as advertising injury. By contrast, nothing in...complaints alleged that Frog said anything disparaging about Amsco's products.")

IRST insists that a claim of proprietary rights in technology to which SPI claims to have sole and exclusive patent rights impliedly disparages SPI's products because it implies that SPI's assertion of exclusive rights is untrue. Thus IRST contends that it is possible that SPI has stated an advertising injury under the policy. However, we find the case of *Heritage Mutual Insurance Company v. Advanced Polymer Technology, Inc.*, 97 F.Supp.2d 913, 93132 (S.D.Ind. 2000) to be instructive on this point:

> ...[W]e do not consider the plain and ordinary meaning of the word "disparage" particularly difficult to discern. Black's Law Dictionary (7th ed. 1999) defines disparage as "[t]o dishonor (something or someone) by comparison" or "[t]o unjustly discredit or detract from the reputation of (another's property, product, or business)." The American Heritage Dictionary (2d college ed. 1991) defines the term as "[t]o speak of as unimportant or small; belittle" or "to reduce in esteem or rank." Webster's Third New International Dictionary (unabridged 1993) similarly defines disparage as "to lower in esteem or reputation" or "to speak slightingly of." Likewise, under Indiana law, disparage has been defined as to "lower in esteem; discredit." *See Indiana Ins. Co. v. North Vermillion Community Sch. Corp.*, 665 N.E.2d 630, 635 (Ind.Ct.App. 1996)(holding that insurer's duty to defend was triggered under personal injury disparagement clause where underlying plaintiff alleged that insured injured him by damaging his good reputation in the community and by harassing, embarrassing, and subjecting him to ridicule and humiliation by others)(*citing* Webster's New World Dictionary (3rd ed. 1988)). Hence, we look to Environ's allegations to determine if it alleged that APT denigrated, discredited or belittled Environ's products in the course of advertising...Importantly, Environ never contends that APT's advertisements mention Environ, compare the products of the respective companies, or discredit or denigrate Environ's piping products. Nor does Environ claim that APT advertised its products under Environ's name or label...While Environ surely complains that APT improperly made off with its product, Environ simply fails to claim that APT said anything negative about its piping, which negative connotation is, after all, the essence of disparagement. The insured's lack of any direct reference to a competitor's goods or products repeatedly has compelled courts to find that the underlying plaintiff has not alleged an advertising injury under this disparagement offense. *See Frog,Switch*, 193 F.3d at 748...Even in the unlikely event that consumers would somehow connect APT's

> advertised product with Environ's product (to which APT's advertisements do not refer, let alone discredit), the phrase "patent pending" does not equate to saying by implication that Environ's products are inferior, that the claims in APT's patent application are equivalent to the claims in Environ's patent, or that Environ's patent is invalid."

We find that IRST's argument reaches beyond a reasonable reading of the ordinary definition of "disparagement;" and thus is without merit. Additionally, there is no allegation that SPI or SPI products were identified in IRST's advertisement, making the connection to SPI tenuous at best. As in *Heritage Mutual, supra.*, IRST is not alleged to have said anything negative about SPI's products; only that it held proprietary rights in the technology.

Secondly, the exclusion for advertising injury arising out of patent infringement applies to preclude even a possible claim for advertising injury herein. There can be no question that the alleged statement that IRST possessed all necessary proprietary rights in the technology used in its products is a claim arising from patent infringement. IRST urges that SPI could fail on the patent infringement claims but succeed on the misrepresentation claims. However this assertion does not disenfranchise the alleged act of misrepresentation from the essential facts of the claim. SPI complains of an infringement on its patent rights. The alleged misrepresentation as to IRST's rights in the technology necessarily arises from the employment of that technology in IRST's products. It is the alleged infringement with which SPI takes issue, and it is the alleged misrepresentation of IRST's right to utilize the technology which SPI's claims address. While, indeed, the complaint states separate claims for patent infringement and misrepresentation, the essential facts cannot be parsed in such as fashion as to excise the "arising out of" patent infringement from the misrepresentations alleged.

We conclude, therefore, that the patent infringement exclusion applies to preclude coverage under the advertising injury provision of the policy.

For the reasons set forth herein, the court concludes that there is no coverage under the policy and therefore no duty to provide IRST a defense to the claims against it in the Connecticut action.  A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**